For plaintiff: R. DeB. LaBrosse.

For defendant: Vance & Vance.

Schneiderman, Olderman & Matshak
vs.  No. 10132
Walker's National Clothes

January 22, 1931.

SUMNER, J. The complainant presented a petition for the dissolution of the respondent corporation, claiming that because of a disagreement between the president and treasurer the assets of the corporation were dwindling, and asking for the appointment of a receiver. It also alleged that Fred Limer, the treasurer, was guilty of a breach of trust and had sold from the premises of the respondent corporation articles of wearing apparel for his own private advantage.

Morris S. Waïdman was appointed receiver and has presented a report, showing the sum of $2,461.21 received from the sale of the assets of the respondent corporation, also giving a list of its creditors, including a claim by Limer, and showing a balance for distribution to the stockholders after payment of all the claims. The stock in the respondent corporation is owned equally by the complainant, Schneiderman, Olderman & Matshak, and by Fred Limer, who has intervened and become a party to this proceeding.

The receiver further alleges that Limer placed pieces of clothing on the premises of respondent corporation at various times, caused them to be sold and kept the proceeds of the sale without accounting for the profits thereof, and that he has been guilty of breach of trust in other ways.

The Court heard evidence on the allegations of breach of trust on the part of Limer. Limer was the treasurer of the corporation and the local manager. Schneiderman of the complainant corporation was president but lived in New York and only occasionally visited the store. Adolph Hirsch was the store manager acting under the direction of Limer.

Evidence was introduced showing that Limer had from time to time placed his goods on the premises of the respondent corporation for sale; that, acting under his direction, Hirsch took customers whom he could not fit or satisfy at his store over to Limer's store, a few doors away, and sold goods to them from Limer's stock.

Limer admitted placing his goods in the store of the respondent corporation but claimed he did it to fill up the stock and that the profits of the goods sold were given to the respondent. He testified that Schneiderman, who was to do all the buying for the respondent corporation, allowed the stock to be depleted and that he, Limer, had to place his own stock in the store for that reason.

The receiver found 49 pieces of goods on the premises which were claimed by Limer and of which there was no record in respondent's books and the value of Limer's goods so found by the receiver was fixed by the parties at $540.

The Court is satisfied that Limer utilized the store of the respondent corporation and its clerks for his own profit. The stock of the Walker's National Clothes' store was apparently kept up until perhaps the last month and could have supplied most of the demands of its customers. So we may assume that a large part of Limer's stock that was placed upon the premises could have been furnished and sold by the respondent corporation if Limer had so desired.

Hirsch testified that the Walker store employees sold 10 or 12 pieces of Limer's stock a week from September to the following April, a period of about 30 weeks.

The Court does not place implicit confidence in Mr. Hirsch's testimony and feels that his statements were somewhat exaggerated. It was shown that Limer's goods were more expensive and it may be that some customers preferred this quality of goods to those of the respondent corporation. However, Mr. Limer was apparently utilizing Hirsch's services regularly from September, in bringing down dissatisfied customers to his store, and helping him (Limer) to dispose of his goods. In the absence of any positive records, the Court must determine Mr. Limer's obligations in some other way. The complainant presented a list of bank deposits for the various months in which the respondent did business and perhaps it is fair to estimate from these deposits the falling off of the respondent's business due to Limer's conduct. These bank deposits are shown on the daily sales reports made by Hirsch to the complainant and the list shown on the sales reports seems to agree with the list of bank deposits

offered in evidence except for the month of March, 1930, when the amount was apparently $1,024 instead of $661.96 as shown on the bank deposit list.

The Court feels that Limer had the benefit of Hirsch's services for many weeks, perhaps for 30 weeks, and that during that time he should be responsible for one-half of Hirsch's weekly salary, namely $14 amounting to $420.

It also feels that he was pressing the sale of his goods to the exclusion of Walker's goods for some time, especially during January, February and March, 1930. If we assume that the dwindling of the bank deposits in January, February and March was due to Limer's conduct, we would get some basis upon which to estimate the loss of the respondent corporation.

The bank deposits fell from $2,426 in December to $1,266 in January, to $953 in February and to $1,024 in March. If we add $800 to the bank deposits for March, we would bring the amount up to about the same as the bank deposits in the month of March, 1929. Then if we add $575 to the bank deposits in January and the same in February, we would have the bank deposits nearer the amount that they should have been. The total amount so to be added to the bank deposits is $1,950, and assuming this sum represents suits sold at $12.50 apiece with a profit to the respondent corporation of $4 a suit, we would have the sum of $624 for which Limer should be held responsible, and that added to $420, or one-half of Hirsch's wages, makes a total of $1,044. Nine months' interest on this sum brings it up to about $1,095, and the Court decides that this sum of $1,095 should be deducted from the amount which would otherwise be due to Limer in the liquidation of the corporation.

For complainants: Max Winograd.

For respondent: McGovern & Slattery and Robinson & Robinson.